UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK ZIMBAL,

        Plaintiff,

                            Case No. 22-cv-985-pp

  v.

FIRSTECH, INC.,

        Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(DKT. NO. 82) AND DISMISSING CASE**

---

On August 26, 2022, the plaintiff filed a complaint against the defendant, his former employer, alleging retaliation and interference under the Americans with Disabilities Act (ADA), as amended, 42 U.S.C. §12101, *et seq.* Dkt. No. 1. On March 1, 2024, the defendant filed a motion for summary judgment. Dkt. No. 82. On June 7, 2024—after the defendant filed its motion and the plaintiff had filed his opposition materials, but before the defendant's reply brief was due—defense counsel moved to withdraw. Dkt. No. 115. At a hearing on June 26, 2024, attended by the parties' lawyers and Jeff Reichhoff, the sole shareholder and employee of the defendant—the court granted that motion and stayed the case until September 24, 2024 to allow the defendant to obtain new counsel. Dkt. No. 120. The court advised Mr. Reichhoff that if successor counsel did not appear by that date, the court would rule on the defendant's motion without a reply brief from the defendant. Id. at 3. In the months since,

1

no attorney has filed a notice of appearance on behalf of the defendant, so as it said it would in its June 26, 2024 minute order (Dkt. No. 120), the court will rule on the motion based on the briefing before it. The court will grant the defendant's motion for summary judgment and dismiss the case.

## I. Background

As the procedural history above implies, the defendant has not filed a reply brief or a response to the plaintiff's statement of additional material facts (Dkt. No. 111). According to Civil Local Rule 56(b)(4) (E.D. Wis.), the court "will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment." The court will consider the facts in the plaintiff's statement of additional material facts as undisputed for purposes of this motion. Andersen v. Harris & Harris, Ltd., Case No. 13-CV-867-JPS, 2014 WL 1600575, at *2 (E.D. Wis. Apr. 21, 2014) (deeming non-movants additional proposed facts as admitted due to opposing party's failure to respond).

The defendant, a staffing agency, employed the plaintiff in its Technical Staffing Group department from July 2017 to June 9, 2020. Dkt. No. 112 at ¶¶1–2. The plaintiff reported to Jeff Reichhoff, the defendant's president. Id. at ¶¶5, 9. The plaintiff was responsible for recruiting and placing both contract and permanent staff and for new business development. Id. at ¶9.

The key events alleged in the complaint began in late January 2020, when Reichhoff received a charge alleging disability discrimination filed by former employee Michelle Krebsbach. Id. at ¶¶38, 40. The plaintiff was present

2

at a 2019 meeting where Reichhoff informed Krebsbach that she must sign a "last chance agreement" or else her employment would be terminated. <u>Id.</u> at ¶¶44–45. Krebsbach refused to sign the agreement and her employment with the defendant ended, though the parties dispute whether that was due to her refusal to sign the agreement or to Reichhoff's previous statements that Krebsbach was "nuts." <u>Id.</u> at ¶46.

In early February 2020, Reichhoff approached the plaintiff and informed him that Krebsbach had filed a lawsuit. Dkt. No. 111 at ¶45. Reichhoff stated that the plaintiff would be a key witness because he was present during Krebsbach's termination meeting. <u>Id.</u> at ¶46. According to the plaintiff's recollection, Reichhoff said to the plaintiff, "I never said she was nuts, right? I never said she was crazy, right? I never forced her out, right?" <u>Id.</u> at ¶47 (quoting Dkt. No. 114-1 at 36, Tr. p. 138). The plaintiff responded that he'd "have to think about it to make sure [he] could remember everything right." <u>Id.</u> at ¶48 (quoting Dkt. No. 114-1 at 36, Tr. p. 138). The plaintiff recalled that Reichhoff was very upset and stated that "there is nothing to remember. I've just told you the way it is." <u>Id.</u> at ¶49 (citing Dkt. No. 114-1 at 36, Tr. p. 138).

The following day, Reichhoff returned to the plaintiff's office and "repeated that he never said that Krebsbach was nuts, and then stated, 'I wasn't trying to coerce you, right?'" <u>Id.</u> at ¶50 (quoting Dkt. No. 114-1 at 36, Tr. p. 141). The plaintiff responded that if he had to go to court, he would not lie. <u>Id.</u> at ¶51 (citing Dkt. No. 114-1 at 36, Tr. p. 141). Reichhoff then replied, "I don't know why this is so hard for you." <u>Id.</u> at ¶52 (quoting Dkt. No. 114-1 at

3

36, Tr. p. 141). Ultimately, there was no hearing, trial or testimony taken in Krebsbach's matter. Dkt. No. 112 at ¶¶47–48.

According to the plaintiff, his refusal to agree to testify in a particular way began a series of negative events for him. The plaintiff states that in mid-February 2020, he was denied an earned commission for a successful placement he made in late January. Dkt. No. 111 at ¶55. In late February, Reichhoff informed the plaintiff that he was reducing the plaintiff's compensation by $20,000, which the plaintiff believed was without explanation. Id. at ¶¶56, 60. Reichhoff also directed the plaintiff to erase certain notes and job placement data the plaintiff was tracking on his office whiteboard; again, the plaintiff says he received "no explanation." Id. at ¶61.

On April 14, 2020, Reichhoff emailed the plaintiff asking where he was and stating that he (the plaintiff) should be working in the office. Dkt. No. 112 at ¶63. The plaintiff contends that this was a contradiction to Reichhoff's earlier instruction that employees should be working remotely during the COVID-19 pandemic. Id. Shortly thereafter, Reichhoff informed the plaintiff that the plaintiff would no longer be able to post on ZipRecruiter or Indeed until Reichhoff and the plaintiff had met. Id. at ¶65; Dkt. No. 111 at ¶71. The plaintiff contends that Reichhoff never scheduled a follow-up meeting. Id. at ¶72.

During this time, the defendant contends that the plaintiff's performance was declining. In March 2020, two employees the plaintiff had placed left their positions. Dkt. No. 112 at ¶¶55, 57. On April 9, 2020, Reichhoff emailed the

4

plaintiff and mentioned that he saw only one phone interview on the plaintiff's calendar that week. Id. at ¶61. On April 28, 2020, Reichhoff stated that the plaintiff "need[ed] to put some people to work" and that the gross profit on his work was "way, way lower than what it needs to be." Id. at ¶71 (quoting Dkt. No. 86-9 at 5).

On May 13, 2020, Reichhoff placed the plaintiff on an unpaid layoff and threatened to further reduce his salary if he returned. Dkt. Nos. 111 at ¶¶76–77; 112 at ¶74 (quoting Dkt. No. 87-21 at 2). Reichhoff stated that he had had "enough of the excuses" and that there was "no reason" for the plaintiff to work from home; he reiterated that the plaintiff's performance was lacking. Dkt. No. 112 at ¶74 (quoting Dkt. No. 87-21 at 2).

Two days later, the plaintiff sent Reichhoff an email stating that Reichhoff had "discriminated against" the plaintiff by not allowing the plaintiff to work from home. Dkt. No. 111 at ¶78 (quoting Dkt. No. 114-9). The plaintiff stated that Reichhoff had created a "dangerous work environment" by not quarantining after he traveled to Florida. Id. (quoting Dkt. No. 114-9). The plaintiff asserted that he and his father had heart conditions, which put them at risk for COVID-19. Id. (quoting Dkt. No. 114-9). The plaintiff said that others were allowed to work from home, but not him. Id. (quoting Dkt. No. 114-9). The plaintiff mentioned Krebsbach's case and wrote, "I did not like it when you tried to coerce me this past winter into lying to agree that you did nothing wrong." Id. (quoting Dkt. No. 114-9). The plaintiff stated that Reichhoff's "bad behavior" toward the plaintiff "elevated" after he refused to testify favorably. Id. (quoting

Dkt. No. 114-9). He asserted that Reichhoff had a "history of inappropriate behavior" toward other employees "especially when medically related." Id. (quoting Dkt. No. 114-9). The plaintiff asserted that Reichhoff's actions were inconsistent with his earlier COVID-related policies. Id. (quoting Dkt. No. 114-9). The plaintiff closed the email by maintaining that his performance still was on track despite the slowed hiring as a result of COVID-19. Id. (quoting Dkt. No. 114-9). Reichhoff responded that the plaintiff's "performance ha[d] been absolutely horrible." Id. at ¶79 (quoting Dkt. No. 114-9). Reichhoff asserted that this was "a financial situation and that's it" and accused the plaintiff of trying to make a "case" that Reichhoff was doing something wrong. Id. at ¶80 (quoting Dkt. No. 114-10). In a third email, Reichhoff again asserted that the plaintiff's performance was "terrible" and that Reichhoff had "done absolutely nothing wrong." Id. at ¶81 (quoting Dkt. No. 114-11).

A few days later, on May 18, 2020, Reichhoff emailed the plaintiff and informed the plaintiff that he could come back to work and that he would be paid for the week-long layoff. Id. at ¶87; Dkt. No. 112 at ¶90 (quoting Dkt. No 86-12 at 2). The plaintiff returned to work and on June 9, 2020, successfully placed a new hire at a client. Dkt. No. 111 at ¶92. That same day, Reichhoff terminated the plaintiff via email. Id. at ¶93 (quoting Dkt. No. 87-11). Reichhoff cited "declining company sales, increasing company losses and the Covid 19 pandemic" as grounds for the plaintiff's termination. Id. (quoting Dkt. No. 87-11). The plaintiff disputes the veracity of this statement, stating that his

division's gross profit margin was higher than that of other divisions. Id. at ¶¶94–95.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Still, the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Id. (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003) (citing Liberty Lobby, 477

7

U.S. at 255). "However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." Fitzgerald v. Santoro, 707 F.3d 725, 730 (7th Cir. 2013) (quoting Harper v. C.R. Eng., Inc., 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in her favor." Fitzgerald, 707 F.3d at 730 (quoting Makowski v. SmithAmundsen LLC, 662 F.3d 818, 822 (7th Cir. 2011)).

## III. The Parties' Arguments

### A. The Defendant's Brief (Dkt. No. 108)[1]

The defendant argues that the plaintiff cannot establish a *prima facie* case of retaliation or interference under the ADA. Dkt. No. 108 at 4. The defendant first argues that the plaintiff cannot establish that he engaged in any activity protected by the ADA. Id. at 6. The defendant contends that the plaintiff must show that he sought an accommodation or raised a claim of disability discrimination. Id. (citing Arms v. Milwaukee County, Case No. 18-CV-1835, 2019 WL 1981036, at *4 (E.D. Wis. May 1, 2019)). The defendant argues that the plaintiff accused Reichoff of discriminating against him "for some reason," when the plaintiff "understood that Reichhoff didn't consider the pandemic a legitimate reason to stay home, and [the plaintiff] knew the layoff occurred because he wasn't working in the office." Id. It asserts that the

---

[1] After filing its opening brief (Dkt. No. 83), the defendant amended it to conform to the defendant's revised statement of undisputed material facts. The brief at Dkt. No. 108 is the operative brief.

plaintiff "knew that refusing to report to work because he was simply afraid of getting COVID could get him fired." Id. The defendant argues that the plaintiff never reported to the defendant "that he was suffering from COVID, that he had been advised by a healthcare provider to quarantine, that the had a health condition which put him at a greater risk of contracting COVID or that it was medically necessary to work from home." Id. at 6. The defendant also argues that before his termination, the plaintiff didn't file a complaint with the Equal Opportunity Employment Commission or the Wisconsin Department of Workforce Development alleging discrimination and asserts that the plaintiff never has claimed or proven that he has a disability. Id. at 6-7.

The defendant argues that the plaintiff's potential testimony related to his former coworker Krebsbach's charge of discrimination also is not protected activity. Id. at 7-8. The defendant argues that there is no record evidence that the plaintiff helped Kresbach exercise her rights under the ADA or assisted Krebsbach in pursuing legal action, only that he was a potential witness. Id. The defendant emphasizes that the plaintiff never was contacted by the EEOC or the DWD in relation to Kresbach's complaint and did not testify at a deposition. Id. at 9. The defendant maintains that the plaintiff has presented no evidence that Reichhoff "understood the alleged discussion to have constituted protected activity." Id. According to the defendant, the plaintiff's failure to prove this element of his *prima facie* case is fatal to both his claims. Id. (citing Atanus v. Perry, 520 F.3d 662, 667 (7th Cir. 2008)).

9

Next, the defendant argues that the only materially adverse actions the plaintiff suffered were his February 2020 salary reduction and his June 2020 termination. Id. at 10. While the plaintiff contends that he was not paid a commission for a placement he made in December 2019, the defendant argues that the placement never was finalized, so no commission was due. Id. at 10–11. The defendant argues that the plaintiff has presented no evidence that even had he completed the placement, the fact that he was not paid for it was in retaliation for engaging in protected activity. Id. at 11.

The defendant argues that the defendant's revocation of the plaintiff's ability to post on ZipRecruiter and Indeed in April 2020 was not materially adverse because the plaintiff had access to other tools to source candidates for his clients. Id. at 11. The defendant contends that most of the plaintiff's placements were sourced from sources other than ZipRecruiter and Indeed. Id. at 11–12. It maintains that the plaintiff had access to ZipRecruiter and Indeed between April 15, 2020 and May 20, 2020, and that the reason the plaintiff was told he could not use these tools was because he would not report to the office, "not because of some alleged protected activity." Id. The defendant argues that the revocation of access was more like a "mere inconvenience" than a "materially adverse change in the terms and conditions of his employment." Id. at 12. (quoting Bruno v. Mayor Chastity Wells-Armstrong, Case No. 20-cv-2052, 2022 WL 16708450, at *7 (C.D. Ill. Sept. 28, 2022) (quoting Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996)).

The defendant argues that the plaintiff's May 2020 unpaid layoff (and Reichhoff's alleged threat to reduce his pay when he returned) also was not an adverse action. Id. at 12. The defendant asserts that it "promptly rescinded the discipline and made Plaintiff whole for all time missed." Id. at 12-13. It says that the plaintiff has conceded that Reichhoff did not reduce the plaintiff's compensation after he returned to work. Id. at 13. The defendant emphasizes that the plaintiff was notified of the layoff on May 13, 2020 at 7:40 p.m., and that the layoff was rescinded only two days later, with compensation "for the duration of his layoff." Id. at 13-14.

The defendant next argues that the plaintiff cannot show that he was meeting the defendant's legitimate employment expectations or that his job performance was satisfactory. Id. at 14. The defendant argues that Reichhoff had "long-standing concerns" with the plaintiff's performance going back to the plaintiff' initial hire in 2017. Id. at 14-18. The defendant contends that on several occasions throughout 2018 and 2019, Reichhoff expressed frustration with the plaintiff's performance. Id. at 15–16. It argues that this escalated in May 2020, when Reichhoff told the plaintiff in an email that his performance had been "terrible" and "absolutely horrible" that year. Id. at 17 (quoting Dkt. No. 109 at ¶¶74, 83). The defendant states that the plaintiff permanently placed only one candidate between November 16, 2019 and April 28, 2020, and placed no contractors during that period. Id. (citing Dkt. No. 109 at ¶¶95–96). According to the defendant, the business for the plaintiff's division was down 64.7% in January to May 2020 from the prior year. Id. at 18 (citing Dkt. No.

109 at ¶¶140–41). The defendant contends this is sufficient to show that the plaintiff was not performing satisfactorily at the time of his termination. Id.

The defendant argues that the plaintiff has not identified any individual who did not engage in protected activity and was treated more favorably than him. Id. at 19. The defendant states that the only employee the plaintiff has identified as being allowed to work remotely during COVID while the plaintiff could not had a pre-existing agreement with Reicchoff for a hybrid work schedule (at reduced compensation), while the plaintiff did not. Id. The defendant points out that the plaintiff continued to work from home "throughout the balance of his employment." Id. The defendant also identifies employees whom the defendant terminated due to poor performance during the plaintiff's tenure—three in 2020, one in 2017 and one terminated by the plaintiff. Id.

Turning to causation, the defendant argues that even if the plaintiff had established a *prima facie* case of retaliation and interference, his claims would fail because he cannot show his activity was the but-for cause of his termination. Id. The defendant reiterates that the plaintiff was not due a commission payment for placing someone in 2019 because he didn't complete the placement (or if he did, he never told Reichhoff). Id. at 20. Next, though the defendant concedes that the plaintiff's salary was reduced in 2020 after his conversation with Reichhoff regarding testifying in Krebsbach's case, the defendant recounts that Reichhoff testified that the reduction was an effort to motivate the plaintiff to reach his 2020 gross profit goals and the result of the

plaintiff's poor performance. Id. at 20–21. The defendant argues that the plaintiff's poor performance (making only one permanent placement in 2020, and that placement having quit during the guarantee period) and refusal to come into the office gave Reichhoff reason to believe that the plaintiff was not "putting forth the necessary effort to succeed." Id. at 21. The defendant argues that Reichhoff prohibited the plaintiff from using ZipRecruiter and Indeed "on a temporary basis (until they met)" because the plaintiff refused to come into the office. Id. The defendant contends that the plaintiff's declining performance was the reason he was ultimately terminated, not any protected activity. Id. at 21–22. The defendant argues that this history prevents the court from concluding that there was a causal connection between any protected activity and the plaintiff's termination. Id. at 22. It asserts that the plaintiff has presented no evidence that the defendant was motivated by an intent to discriminate. Id. And the defendant argues that the plaintiff never asserted that he had a disability or any health condition that required him to work from home, that he never was advised by a health care provider that he had a disability or was required to work from home and that he presented no evidence that Reichhoff discriminated against anyone based on a disability. Id. 22–23.

The defendant next argues that the plaintiff could not show that its reasons for terminating the plaintiff were pretextual. Id. at 23. According to the defendant, it has "articulated a legitimate non-discriminatory reason for each action taken," so the burden has shifted to the plaintiff to show that the reason the defendant gave for the plaintiff's termination was false. Id. at 24-24. The

defendant contends that Reichhoff had reviewed the numbers and concluded that the plaintiff's performance was unsatisfactory. Id. at 24–25. The defendant argues that the plaintiff cannot show that Reichhoff did not honestly believe that the plaintiff's performance was subpar. Id. at 25. The defendant states that the plaintiff's disagreement with Reichhoff's assessment of his performance is irrelevant to the pretext question. Id. It asserts that the undisputed facts show that it did not retaliate or interfere with any exercise of the plaintiff's rights under the ADA, and so summary judgment must be granted in its favor.

B.    The Plaintiff's Opposition (Dkt. No. 110)

The plaintiff responds that he did engage in protected activity because:

> (1) [the plaintiff] had a good faith basis to believe Reichhoff discriminated against Krebsbach, (2) [the plaintiff] expressed to Reichhoff that [he] would not misrepresent the truth for [the defendant[ if he was called as a witness in Krebsbach's disability discrimination case, and (3) [the plaintiff] sent a detailed email to Reichhoff on May 15, 2020 outlining why he believed Reichhoff was engaging in unlawful discrimination.

Dkt. No. 110 at 9. The plaintiff argues that he had a "good faith basis" to believe that Reichhoff had discriminated against Krebsbach based on her disability because he witnessed Reichhoff state that Krebsbach was "nuts," "crazy" and "on meds." Id. at 10. He asserts that Krebsbach was terminated because she refused to sign an "unreasonable" Last Chance Agreement, "explaining that she had been hospitalized at [a mental health facility], that she was on medication and was under a doctor's care." Id. (citing Dkt. No. 111 at ¶29). The plaintiff claims that after Krebsbach refused to sign the agreement,

Reichhoff told the plaintiff that he couldn't have Krebsbach working for him because she was crazy and had been in a mental health facility, and that after Krebsbach's termination, Reichhoff repeatedly referred to her as "nuts" and stated that if she was still there, he'd "kill her." Id. (citing Dkt. No. 111 at ¶¶30-31, 62-64). The plaintiff contends that these statements gave him a good-faith basis to conclude that Reichhoff had discriminated against Krebsbach. Id.

The plaintiff states that Reichhoff approached him regarding testifying in Krebsbach's disability discrimination case in February 2020. Id. at 11. The plaintiff argues that by informing Reichhoff that he would not lie if he had to go to court relating to Krebsbach's termination, he was opposing discrimination. Id. He argues that his May 2020 email to Reichhoff also constituted opposition to discrimination. Id. at 12. The plaintiff argues that the email referenced Reichhoff's attempted "coercion" of his testimony about Krebsbach and Reichhoff's "history of inappropriate behavior" toward employees when "medically related." Id. (quoting Dkt. No. 112 at ¶78).

The plaintiff asserts that he suffered multiple adverse employment actions because of his protected activity. Id. at 13. He contends that he "suffered an escalating pattern of materially adverse actions" beginning in February 2020, after his conversation with Reichhoff regarding testifying. Id. The plaintiff states that after this conversation, Reichhoff reduced his salary and "denied [the plaintiff] an earned commission." Id. at 14. He asserts that Reichhoff next instructed the plaintiff to erase critical production notes (denying him one critical work tool) and denied him access to Indeed and

ZipRecruiter (denying him other work tools). Id. He asserts that in May 2020, Reichhoff placed him on the unpaid layoff and told the plaintiff he was going to further reduce the plaintiff's salary. Id. He asserts that after his May 15, 2020 email "opposing discrimination," Reichhoff sent three emails threatening to terminate the plaintiff "because of [the plaintiff's] email opposing discrimination." Id. The plaintiff argues that the combination of these actions would have dissuaded a reasonable person from making or supporting a charge of discrimination. Id. at 15 (citing Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 73 (2006)).

The plaintiff argues that he has established causation because the adverse actions began immediately after his conversation with Reichhoff about testifying, and his termination occurred only twenty-five days after his email opposing discrimination. Id. at 15–16. He characterizes this as "suspicious timing." Id. at 15. He says that his "oppositional activity" occurred in February 2020, and that Reichhoff placed him on unpaid leave May 13, 2020. Id. at 16. The plaintiff argues that the causal connection was not broken by his refusal to come into the office; he contends that Reichhoff never told him he was required to work in-person (and that he was "instructed" to work from home) and that many others were working remotely during COVID. Id. at 17. The plaintiff disputes the defendant's assertion that he made no effort to meet with Reichhoff after Reichhoff denied him the use of ZipRecruiter and Indeed "until they met," arguing that Reichhoff never set up a meeting or directed the plaintiff to meet with him. Id. The plaintiff argues that after his May 2020 email

16

opposing discrimination, Reichhoff responded with "a barrage of emails" threatening to terminate him. Id. at 18 (quoting Dkt. No. 111 at ¶¶79–81). The plaintiff contends that this direct response to his protected activity is evidence of a retaliatory motive, strengthened by the fact that Reichhoff terminated the plaintiff twenty-five days later. Id. at 19-20.

According to the plaintiff, he was treated differently than other employees who did not oppose discrimination. Id. at 20. He says that at least one other employee was allowed to work from home for family needs (this is the employee with whom the defendant states it had an agreement), while the plaintiff alleges he was denied that opportunity despite also asserting family health needs as a justification. Id. at 20-21. The plaintiff also contends that another division of the defendant, the MSG division, was losing money at the time the plaintiff was terminated (which, he says, is the reason the defendant gave for his termination), but that no one from that division was terminated. Id. at 21. He asserts that his division actually was making money in April through May 2020. Id.

The plaintiff argues that there is record evidence that the defendant's reason for terminating him was pretextual. Id. First, the plaintiff argues that Reichhoff denied him access to recruiting tools and production notes he'd created, which had a direct negative impact on his performance; he says Reichhoff did this for no reason. Id. at 22. Next, the plaintiff argues that Reichhoff's reason for temporarily laying him off in May 2020—the plaintiff's insistence on working from home—was pretextual because Reichhoff never had

17

instructed him to work from the office (again, the plaintiff says he "was instructed" to work from home). Id.

The plaintiff also argues that Reichhoff changed his reasons about the May 2020 layoff, first asserting that it was because the plaintiff was working from home (although the plaintiff argues he'd been directed to work from home), then later asserting that it was for "financial reasons;" the plaintiff argues that a shifting reason is evidence of pretext. Id. at 23. The plaintiff says that his termination letter contained false information. Id. at 23–24. While the letter states that declining sales, increasing losses and the COVID-19 pandemic were the grounds for his termination, the plaintiff argues that sales for his division were increasing and that the division was profitable at the time of his termination. Id. at 24. The plaintiff asserts that both his division and the MSG division had identical gross profit margins for 2020. Id. at 24–25. He argues that the defendant received a PPP loan, which was designed to offset the effects of COVID-19 on the defendant's workforce. Id. at 25.

The plaintiff argues that the defendant's focus on his performance is a shift from the reason initially given in the termination email, which indicates pretext. Id. at 25–26. He argues that he was an "effective producer," pointing to the fact that Reichhoff asked him to help with the MSG division in 2018 and 2019. Id. at 26. He says he achieved his 2019 gross sales goal and got a performance bonus at the end of that year. Id. The plaintiff asserts that the first time Reichhoff challenged his performance was after he engaged in protected activity in February 2020. Id. The plaintiff argues that Reichhoff is

18

not credible, so the court should not credit his statements about whether he honestly believed the plaintiff's performance was unsatisfactory.[2] Id. at 26–27.

The plaintiff argues that the evidence recounted above also supports his ADA interference claim. Id. at 29. He argues that he did not need to testify in Krebsbach's case to have engaged in protected opposition to discrimination. Id. at 29–30. The plaintiff also argues that he need not have a disability himself to assert an ADA interference claim. Id. at 30.

## IV. Analysis

### A. Retaliation

"For a retaliation claim under the ADA, [the plaintiff] must show that: '(1) [he] engaged in statutorily protected activity; (2) the [defendant] took adverse action against [him]; and (3) the protected activity caused the adverse action.'" Brooks v. City of Pekin, 95 F.4th 533, 539 (7th Cir. 2024) (quoting Trahanas v. Northwestern Univ., 64 F.4th 842, 856 (7th Cir. 2023)). The defendant "must then offer a legitimate, nondiscriminatory reason for its adverse action." Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1117 (7th Cir. 2001). Then the burden shifts back to the plaintiff to show that the defendant's reason was pretextual. Koty v. DuPage County, Ill., 900 F.3d 515, 519 (7th Cir. 2018).

As a threshold matter, the plaintiff "must have engaged in a statutorily protected activity—in other words, he must have asserted his rights under the ADA by either seeking an accommodation or raising a claim of discrimination

---

[2] The plaintiff also asserts that the evidence shows that the defendant engaged in "years of tax fraud," and that Reichhoff admitted to engaging in PPP loan fraud. Dkt. No. 110 at 27.

due to his disability." Preddie v. Bartholomew Consol. Sch. Corp., 799 F.3d 806, 814–15 (7th Cir. 2015). "Protected activity under the ADA includes opposition to 'any act or practice made unlawful by this chapter' or participating in 'an investigation, proceeding, or hearing under this chapter.'" Bruno v. Wells-Armstrong, 93 F.4th 1049, 1055–56 (7th Cir. 2024) (quoting 42 U.S.C. §12203(a)). Under the opposition clause, the plaintiff must act "in good faith and with a reasonable and sincere belief that he or she is opposing unlawful discrimination." Talanda v. KFC Nat. Mgmt. Co., 140 F.3d 1090, 1096 (7th Cir. 1998) (quoting Roth v. Lutheran Gen. Hosp., 57 F.3d 1446, 1459 (7th Cir. 1995)). While "an informal complaint may constitute protected activity for purposes of retaliation claims," Casna v. City of Loves Park, 574 F.3d 420, 427 (7th Cir. 2009), "complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient," Tomanovich v. City of Indianapolis, 457 F.3d 656, 663–64 (7th Cir. 2006).

The plaintiff asserts that he engaged in protected activity because: (1) he "had a good faith basis to believe Reichhoff discriminated against Krebsbach"; (2) he told Reichhoff that he "would not misrepresent the truth" if he had to go to court in Krebsbach's disability discrimination case; and (3) he sent an email to Reichhoff in May 2020 "outlining why he believed Reichhoff was engaging in unlawful discrimination." Dkt. No. 110 at 9. This is not sufficient to constitute protected activity under the ADA.

The fact that the plaintiff had a good-faith basis to believe that Reichhoff had discriminated against someone else does not, standing alone, does not constitute "protected activity," or any activity at all.

The plaintiff's undisputed facts prove that Reichhoff attempted to tell the plaintiff how he should testify should the plaintiff be called as a witness in Krebsbach's case. Dkt. No. 111 at ¶¶46–49 (citing Dkt. No. 87-1 at 138). In response, the plaintiff stated "Jeff, if I have to go to court I'm not going to lie," and stated that he would try to remember what happened during Krebsbach's termination meeting. Id. at ¶¶48, 51 (citing Dkt. No. 87-1 at 138, 141). Contrary to the plaintiff's insistence, this statement does not constitute opposition to discrimination under "controlling case law." Dkt. No. 110 at 11 (citing Ferrill v. Oak Creek-Franklin Joint Sch. Dist., 860 F.3d 494, 501 (7th Cir. 2017)). In Ferrill, the Seventh Circuit "assume[d] for the sake of argument" that a plaintiff's complaint that "white faculty members were reluctant to take direction from a black principal" constituted opposition to discrimination. Ferrill, 860 F.3d at 501. Assuming "for the sake of argument" does not constitute a holding, but in any event, in Ferrill the plaintiff's complaint was directly related to possible racial discrimination in her workplace. Here, the plaintiff asserted only an unwillingness to "lie" for Reichhoff if he were to go to court in a legal proceeding brought by a former coworker. The plaintiff has not stated that he was unwilling to lie *because* the case requiring testimony was a disability discrimination case. The plaintiff's statements demonstrate only that he expressed that he would not lie in court. The plaintiff has identified no

21

evidence that would allow the court to infer that his opposition was driven by anything other than a desire to testify truthfully, regardless of the subject matter. That is insufficient to constitute opposition to discrimination under the ADA. See Tomanovich, 457 F.3d at 663–64; Miller v. Am. Fam. Mut. Ins., 203 F.3d 997, 1008 (7th Cir. 2000) (plaintiff did not engage in a protected activity where "[h]er complaints instead concerned a general displeasure with being paid less than her co-workers given her longer tenure and the fact that she had trained some of them" and not discrimination related to a protected class); Brode v. Xeris Pharms., Inc., Case No. 22 CV 2903, 2023 WL 7220554, at *4 (N.D. Ill. Nov. 2, 2023) (no protected activity under the ADA where the plaintiff opposed the employer's vaccination requirements on moral and religious grounds rather than for disability-related reasons).

Nor is it clear that the plaintiff's stated unwillingness to lie in court constitutes "participation" in an investigation, proceeding or hearing under the ADA. Neither the EEOC nor the DWD contacted the plaintiff regarding Krebsbach's complaint, nor did the plaintiff sit for a deposition regarding her complaint. Dkt. No. 112 at ¶¶160–61 (citing Dkt. No. 87-12 at 129–30). The participation clause applies only to a plaintiff's actual participation in formal investigations, proceeding or hearings. Hatmaker v. Mem'l Med. Ctr., 619 F.3d 741, 746–47 (7th Cir. 2010). Simply being willing to testify, without more, does not constitute participation. Elliott v. Superior Pool Prod., LLC, Case No. 15-cv-01126, 2017 WL 1197669, at *5 (C.D. Ill. Mar. 30, 2017) (plaintiff did not "participate" in an investigation by being willing to testify and ultimately never

22

did). And here, the plaintiff did not express a *willingness* to testify; he expressed an *unwillingness* to lie if he was required to go to court.

The plaintiff's May 2020 email to Reichhoff also does not constitute protected activity. In relevant part, that email stated that Reichhoff had "discriminated against" the plaintiff by not allowing him to work from home during the COVID-19 pandemic. Dkt. No. 111 at ¶78 (quoting Dkt. Nos. 87-22 at 10, Tr. p. 314–15; 114-9). The plaintiff stated that he and his elderly father were at risk for COVID-19 due to heart conditions. Id. The plaintiff stated that Reichhoff had "a history of inappropriate behavior to numerous employees, especially when medically related." Id. The plaintiff wrote that he refused to lie for Reichhoff regarding Reichhoff's time in Florida during the pandemic or participate in his Reichhoff's "unethical behavior." Id. Finally, the plaintiff alleged that Reichhoff was "allowing a hostile work environment" due to his inconsistent COVID-19 policies. Id.

None of the statements in the plaintiff's email prove that he was opposing disability discrimination prohibited by the ADA. The main thrust of the plaintiff's email was his dissatisfaction with Reichhoff's behavior and policies around remote work during COVID-19. Although the plaintiff asserts that Reichhoff "discriminated" against him by not allowing him to work from home, he has not argued that Reichhoff was discriminating against him due to a disability (or any other protected class). As the defendant repeatedly points out, the plaintiff has not alleged that he suffers from a disability. Grievances about the plaintiff's supervisor or work environment—without any connection to a

23

protected class—are insufficient to establish protected activity. <u>Tomanovich</u>, 457 F.3d at 663–64 (complaints about "issues of harassment" and pay discrimination were not protected activity under Title VII because the plaintiff did not tie those complaints to a protected class); <u>Gleason v. Mesirow Fin., Inc.</u>, 118 F.3d 1134, 1147 (7th Cir. 1997) (the plaintiff's general complaint about management style without raising the subject of sexual harassment failed to constitute protected activity). Stating that Reichhoff was being "discriminatory" toward the plaintiff "for some reason" is not enough, because the plaintiff did not state or imply that Reichhoff was discriminating against the plaintiff due to a disability.[3] In a similar case in this district, the court declined to find that a plaintiff engaged in protected activity when her complaint stated that she was being "treat[ed] less favorably than other employees and that she was being 'singled out' for some reason, but she did not state or imply that that reason was related to her anxiety or any potential disability." <u>Torres v. Weigel Broad. Co.</u>, 852 F. Supp. 2d 1106, 1113 (E.D. Wis. 2012) (plaintiff's complaints that her employer was being "discriminatory," absent more, were insufficient to constitute protected activity).

The plaintiff tries to draw a causal connection between his refusal to agree to testify in a particular way in Krebsbach's case and Reichhoff's

---

[3] Though the plaintiff mentioned his heart condition in the email, he does not assert that he is disabled or was seeking to work from home as an accommodation for his medical condition. <u>See</u> Dkt. No. 110 at 30 ("[the plaintiff] does not have to be disabled or request an accommodation to be protected from interference, coercion and threats in the workplace. . . . The fact that an individual does not have a disability does not foreclose a retaliation claim.").

escalating "bad behavior" toward him. Dkt. No. 111 at ¶78. But the court has determined that his statement that he would not lie if he had to go to court was not protected activity. There is no evidence linking any actions Reichhoff may have taken in response to the plaintiff's expressed unwillingness to lie to "protected activity." Reichhoff's alleged "inappropriate," "unethical" and "bad" behavior, however unpleasant, is not discriminatory or retaliatory if it was not motivated by the plaintiff's engagement in statutorily protected activity.

Finally, the plaintiff contended in his email that Reichhoff behaved inappropriately regarding other employees in relation to "medically related" issues. Dkt. No. 111 at ¶78. This vague allegation does not constitute protected activity; not every "medically related" issue rises to the level of a disability under the ADA. See 42 U.S.C. §12102(1) (defining "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment"). According to the Seventh Circuit,

> The [ADA] is not a general protection of medically afflicted persons. It protects people who are discriminated against by their employer (the only form of disability discrimination at issue in this case) either because they are in fact disabled or because their employer mistakenly believes them to be disabled. If the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation.

Christian v. St. Anthony Med. Ctr., Inc., 117 F.3d 1051, 1053 (7th Cir. 1997). A generally, unsupported assertion that Reichhoff behaved inappropriately toward employees who had "medically related" issues does not raise an inference of disability discrimination under the ADA. The plaintiff's vague

25

assertion that Reichhoff engaged in such "inappropriate" behavior does not constitute protected activity under the ADA.

Because the plaintiff did not engage in any statutorily protected activity, he cannot establish a *prima facie* case of retaliation under the ADA. Because the plaintiff cannot establish the first element of his *prima facie* case, the court need not address the other elements. O'Leary v. Accretive Health, Inc., 657 F.3d 625, 631 (7th Cir. 2011) (the plaintiff "must first demonstrate that he engaged in activity that is protected by the statute"); Preddie, 799 F.3d at 814–15 (summary judgment on retaliation claim proper where the plaintiff failed to establish that he engaged in protected activity). The court observes, however, that while there are factual disputes regarding why the defendant terminated the plaintiff, the plaintiff has presented almost no evidence that he was treated differently from similarly situated employees who did not engage in protected activity. He has identified only one employee who was allowed to work from home for family reasons, and he did not respond to the defendant's explanation for why that employee was not similarly situated to the plaintiff.

The court must grant summary judgment in favor of the defendant on the plaintiff's claim.

B.     Interference

The ADA's interference provision makes it unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the

26

exercise or enjoyment of, any right granted or protected by [the ADA]." 42 U.S.C. §12203(b). "[A] plaintiff alleging an ADA interference claim must demonstrate that: (1) [he] engaged in activity statutorily protected by the ADA; (2) [he] was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendant[] coerced, threatened, intimidated, or interfered on account of [his] protected activity; and (4) the defendant[ was] motivated by an intent to discriminate." Frakes v. Peoria Sch. Dist. No. 150, 872 F.3d 545, 550–51 (7th Cir. 2017).

The plaintiff relies on the same evidence to support both his retaliation and interference claims. Dkt. No. 110 at 29. He claims that he engaged in protected activity and "opposed discrimination" by refusing Reichhoff's request to testify in a particular way and through his May 2020 email complaining about Reichhoff's refusal to allow him to work from home. Id. The court has concluded that neither of these acts constitute statutorily protected activity under the ADA. That finding is fatal to the plaintiff's interference claim. See Frakes, 872 F.3d at 551 (summary judgment proper on interference claim under sister statute to the ADA where the plaintiff failed to establish that she engaged in statutorily protected activity). The court will not address the defendant's remaining arguments on this claim.

Because the undisputed facts show that the plaintiff did not engage in any statutorily protected activity, both his retaliation and interference claims fail as a matter of law. The court will grant summary judgment in favor of the defendant.

## V. Conclusion

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 82.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 30th day of December, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**